UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-20326-RAR

MAGDALIE JUSTIN,

    Plaintiff,

v.

MARTIN O'MALLEY,
*Commissioner of Social Security*,[1]

    Defendant.
_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon Plaintiff Magdalie Justin's Motion for Summary Judgment (ECF No. 19) and Defendant Martin O'Malley's, Commissioner of Social Security (the "Commissioner" or "Defendant"), combined Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (ECF No. 21).[2] Plaintiff did not file a reply brief, and the time to do so has passed.[3] Having reviewed the Motions, the Response, the record as a whole, and being otherwise fully advised in the matter, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED**, and Defendant's Motion for Summary Judgment be **GRANTED**, and the decision of the Commissioner be **AFFIRMED**.

---

[1] Martin O'Malley became Commissioner of Social Security on December 20, 2023. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as the Defendant in this suit.

[2] Defendant has filed two combined Motions for summary judgment and Responses to Plaintiff's Motion for Summary Judgment in this matter. Because upon review, the filings are identical, the undersigned considers the latest filing and recommends that the prior filing (ECF No. 20) be **DENIED, as moot**.

[3] This case was referred to the undersigned by the Honorable Rodolfo A. Ruiz, II, United States District Judge, for a Report and Recommendation on any dispositive matters. (ECF No. 22).

1

**I.     PROCEDURAL BACKGROUND**

This case involves applications for Social Security disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* and 42 U.S.C. § 1381 *et seq.*  On November 6, 2020, Plaintiff filed applications under Title II of the Act for Social Security disability insurance benefits and an application under Title XVI of the Act for supplemental security income,[4] claiming that she was unable to work due to lupus, swelling pain in her joints, rheumatoid arthritis, stiffness and inflammation of her joints, skin rashes on her face, the inability to stand for long periods of time due to nerve damage to the soles of her feet, fatigue, and myopia bilateral of the right eye.  (R. 212, 219, 289).[5]  Plaintiff claimed a disability onset date of January 1, 2020.  (R. 212).

Plaintiff's applications were initially denied on March 5, 2021.  (R. 100).  Upon reconsideration, Plaintiff's applications were again denied on September 17, 2021.  (R. 134).  Thereafter, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  (R. 137).

Due to the extraordinary circumstances presented by the COVID-19 pandemic, a telephonic hearing took place on May 11, 2022, before Administrative Law Judge Rebecca Wolfe; the hearing was attended by Plaintiff, and impartial vocational expert ("VE") David Pique.  (R. 34).  Although the ALJ informed Plaintiff of her right to representation, she chose to appear and testify without the assistance of an attorney or other representative.  (R. 37–38).

---

[4] *See Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019) (citing *Sims v. Apfel*, 530 U.S. 103, 107, n.2 (2000)) (footnote omitted) ("The regulations that govern [Title II and Title XVI] are, for today's purposes, equivalent.  Likewise, § 405(g) sets the terms of judicial review for each.").
[5] Citations to the Certified Administrative Record (ECF No. 12) are indicated by "R." followed by the Acting Commissioner's Bates numbering stamp (the bold font numbers located in the bottom right-hand corner of each page).

The ALJ issued an unfavorable decision on July 21, 2022, finding that Plaintiff was not under a disability through the date of the decision. (R. 12–27). Plaintiff sought review by the Appeals Council, which subsequently denied her request for review on December 19, 2022. (R. 1–5).

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff has exhausted all forms of administrative review. Accordingly, Plaintiff commenced this action on January 25, 2023, seeking review of the ALJ's decision as a final decision of the Commissioner. (ECF No. 1). Plaintiff and Defendant both filed Motions for Summary Judgment, which are now ripe for review.

## II.   REGULATORY FRAMEWORK

As relevant here, eligibility for Social Security supplemental security income requires the claimant to prove she is disabled within the meaning of 42 U.S.C. § 1382c. Under the Act, a person shall be found to have a disability if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(B).

The Code of Federal Regulations outlines a five-step sequential evaluation process for determining whether a claimant is disabled. The burden for proving disability rests on the claimant. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). If the claimant is found disabled or not disabled at a given step, the ALJ does not proceed to the next step. 20 C.F.R. § 416.920(a)(4).

In the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaged in any substantial gainful activity, she will be found not disabled regardless of her medical condition, age, education, and work experience. 20 C.F.R. § 416.920(b).

In the second step, the ALJ must then determine whether the claimant has a severe medically determinable physical or mental impairment or a combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii).

In the third step, the ALJ assesses the severity of the claimant's impairments or combination of impairments. 20 C.F.R. § 416.920(a)(4)(iii). In making this determination, the ALJ must assess whether the impairment or combination of impairments meets or equals the severity of a specified impairment in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P. App. 1. If the claimant has a listed impairment or an impairment that equals a listed impairment, the ALJ will find her disabled without considering her age, education, and work experience. 20 C.F.R. § 416.920(d).

Before proceeding to the fourth step, the ALJ will assess the claimant's residual functional capacity based on all the relevant medical and other evidence in the record. 20 C.F.R. § 416.920(a)(4). "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)); *see also* 20 C.F.R. § 416.945(a)(1). The ALJ uses the RFC assessment at the fourth step to determine whether the claimant can perform her past relevant work, and at the fifth step to determine if she can adjust to other work. 20 C.F.R. § 416.920(e).

In the fourth step, the ALJ will consider the RFC assessment to determine whether the claimant can still perform her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). In this step, "the claimant carries a heavy burden of showing that [her] impairment prevents [her] from performing [her] past relevant work." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). If the ALJ finds that the claimant can still meet the physical and mental demands of her past relevant work despite the limitations in her RFC, the claimant will be found not disabled. 20 C.F.R. § 416.920(f).

In the fifth step, the ALJ assesses the claimant's RFC against her age, education, and work experience to determine if she can adjust to other work. 20 C.F.R. § 416.920(a)(4)(v). In this step, the burden shifts to the Commissioner to show the existence of other jobs in the national economy that the claimant can perform given her impairments. *Washington*, 906 F.3d at 1359. If met, "the burden shifts back to the claimant to prove she is unable to perform the jobs suggested by the [Commissioner]." *Id.* (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the claimant can make an adjustment to other work, she will be found not disabled. If not, she will be found disabled. 20 C.F.R. § 416.920(g)(1). In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).

## III. ADMINISTRATIVE FINDINGS

After reviewing the record and conducting a hearing, the ALJ determined that Plaintiff was not under a disability within the meaning of the Act. Following a hearing in which testimony was taken and evidence presented, the ALJ issued a written decision. As part of the analysis, the ALJ conducted the required five-step sequential evaluation.[6]

---

[6] The ALJ first found that Plaintiff had met the insured status requirements of the Act through June 30, 2025. (R. 17).

In the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2020, the alleged onset date. (R. 17).

In the second step, the ALJ found that Plaintiff has two severe medically determinable impairments: lupus and arthritis. (*Id.*). The ALJ further found that Plaintiff does not have a medically determinable impairment of rheumatoid arthritis. (*Id.*). The ALJ noted that, though Plaintiff has been diagnosed with rheumatoid arthritis, the record does not contain clinical or laboratory diagnostic test results definitively establishing this condition. (*Id.*). In making that finding, the ALJ considered the claimant's alleged symptoms. (*Id.*).

In the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). Specifically, the ALJ found that Plaintiff's impairments did not meet Listing 1.18, Abnormality of a Major Joint in Any Extremity, because the record did not reflect a documented medical need for a walker, bilateral canes, or other mobility device involving the use of both hands; an inability to use one upper extremity and a documented medical need for a one-handed, hand-held assistive device; or an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities. (R. 17–18). The ALJ found that Plaintiff's visual impairments do not meet Listings 2.02, 2.03, 2.04; nor do her impairments meet General Listing 8.00, Skin Disorders. (R. 18, 19). The ALJ found that Plaintiff's impairments did not meet Listing 14.09, Inflammatory Arthritis, because the record did not reflect definitive evidence of ankylosing spondylitis or other spondyloarthropathies; the record did not reflect persistent inflammation or persistent deformity of one or more major joints in each upper extremity with medical documentation of an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities

6

involving fine and gross movements; and did not reflect persistent complaints of two of the four constitutional symptoms or signs specified in this listing, which are severe fatigue, fever, malaise, and involuntary weight loss.  (R. 18).

The ALJ further found that Plaintiff's impairments did not meet Listing 14.02, Systemic Lupus Erythematosus ("SLE") because the record did not reflect persistent complaints of two of the four constitutional symptoms or signs specified in this listing (severe fatigue, fever, malaise, or involuntary weight loss); and the record did not reflect repeated manifestations of SLE accompanied by complaints of two of the four constitutional symptoms or signs and marked limitation in one of the specified areas of functioning.  (*Id.*).

Thus, the ALJ proceeded to step four.  Before doing so, the ALJ evaluated Plaintiff's RFC and made the following finding:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except the claimant can frequently climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crawl, and crouch; can frequently balance; can occasionally reach, handle, and finger bilaterally; can have no exposure to hazardous machinery or mechanical parts or unprotected heights; can have no exposure to extreme cold or extreme heat; can have no exposure to vibration; can have no requirement to utilize night vision; can maintain concentration for at least two hours at a time while remaining on-task 90 percent of the workday; and requires an option to change between sitting and standing at will while remaining on-task.

(R. 19).

Based on this RFC finding, the ALJ found in step four that Plaintiff is unable to perform past relevant work as a security guard.  (R. 24).  The ALJ then found that Plaintiff was a younger individual with at least a high school education.  (*Id.*).  And the ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled, whether or not the claimant has transferable job skills.  (*Id.*).

7

In step five, the ALJ considered Plaintiff's RFC, age, education, and work experience, and found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*). These jobs include call out operator and order clerk, though the ALJ noted that the job of order clerk requires frequent reaching, handling, and fingering. (R. 25). These jobs require sedentary exertion with a specific vocational preparation level of 2. (*Id.*). Based on Plaintiff's capability of making a successful adjustment to other work that exists in significant numbers in the national economy, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Act, from January 1, 2020 to the date of the ALJ's decision. (R. 26).

## IV.   STANDARD OF REVIEW

District courts reviewing an ALJ's denial of a disability claim treat the denial as the Commissioner's final decision. *Walker v. Comm'r of Soc. Sec.*, 987 F.3d 1333, 1338 (11th Cir. 2021). District courts review an ALJ's denial for "whether substantial evidence supports the decision and whether the correct legal standards were applied." *Id.* (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

Substantial evidence constitutes relevant evidence that a reasonable person would find sufficiently supports the conclusion. *Mitchell v. Comm'r, Social Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Winschel*, 631 F.3d at 1178). The reviewing court must scrutinize the entire record to determine if substantial evidence exists, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), and may not "reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). If substantial evidence supports the Commissioner's decision, the Court "must affirm, even if the proof preponderates against it." *Dyer*, 395 F.3d at 1210 (quoting *Phillips*, 357 F.3d at 1240 n.8).

Reversal is mandated if the Commissioner incorrectly applied the law or insufficiently articulated her legal application, leaving the reviewing court unable to ensure proper legal application. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

**V.   ANALYSIS**

In her Motion for Summary Judgment, Plaintiff generally proffers the difficulties she currently has with her ailments. Plaintiff does not clearly argue any error committed by the ALJ nor cite to the record nor caselaw throughout her filing.[7] *See Gipson v. Kijakazi*, No. CV 123-016, 2023 WL 8717497, at *3 (S.D. Ga. Dec. 18, 2023), *report and recommendation adopted sub nom. Gipson v. O'Malley*, No. CV 123-016, 2024 WL 1119472 (S.D. Ga. Mar. 14, 2024) (recommending the Commissioner's decision be affirmed and noting "[p]laintiff provide[d] little substantive argument and [made] no citations to the record or case law throughout her scattered filings.").

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Here, liberally construing Plaintiff's *pro se* pleading to the best of the undersigned's ability, I find that she raises a single issue; she appears to dispute that the ALJ's decision is supported by substantial evidence.

---

[7] Notably, Plaintiff's failure to cite to the record is in contravention of both Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) and the Court's Scheduling Order. *See* Supplemental Rule 5 ("The action is presented for decision by the parties' briefs. A brief must support assertions of fact by citations to particular parts of the record."); (ECF No. 15) ("Plaintiff shall file a motion for summary judgment setting forth the reasons for relief and including citations to the administrative record and relevant legal authorities"); *see* (*id.*) ("[A]ll factual assertions must include specific page citations from the administrative record using the number provided by the ECF system on the top right corner of the page.").

9

In response, Defendant maintains that the ALJ properly evaluated Plaintiff's disability claim after considering all the relevant medical evidence and that substantial evidence supports the ALJ's decision.

A court may reverse an ALJ's decision "only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). I am not convinced that either situation is present here and so there is no basis for reversing the ALJ's decision. *Leach v. Comm'r of Soc. Sec.*, No. 22-CV-80315, 2024 WL 1446441, at *6 (S.D. Fla. Feb. 21, 2024), *report and recommendation adopted sub nom. Leach v. Commissoner of Soc. Sec.*, No. 22-80315-CIV, 2024 WL 1207342 (S.D. Fla. Mar. 20, 2024).

In her filing, Plaintiff notes certain symptoms that she asserts impact her daily living.[8] Plaintiff asserts that her joints are automatically stiff when she wakes up. Plaintiff asserts that her skin peals and she suffers from hair loss. Plaintiff contends that, due to the severity of her inflammation, she has nerve damage that she feels on her feet, which results in a tingling sensation. Plaintiff asserts that her lupus and rheumatoid arthritis make it so she cannot walk too far. Plaintiff asserts that her pain level increases when it rains or gets cold.

Plaintiff contends that the inflammation in her arms increases to a point where she cannot bend them, and can only attempt to move when the swelling decreases. Plaintiff asserts that, if she is required to constantly move, her muscles, joints, legs, hands, and fingers get swollen and

---

[8] Plaintiff broadly describes her symptoms and course of treatment through the present time, however any information regarding the present is not considered by the undersigned as the scope of judicial review in this federal court is limited to the administrative record. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009–10 (11th Cir. 2020) ("We review only whether the ALJ's decision was supported by substantial evidence, and 'we will look only to the evidence actually presented to the ALJ.'") (quoting *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998)); *Smith v. Comm'r of Soc. Sec. Admin.*, No. 21-14442-CIV, 2023 WL 361424, at *7 (S.D. Fla. Jan. 5, 2023), *report and recommendation adopted sub nom. Smith v. Comm'r of Soc. Sec.*, No. 21-14442-CIV, 2023 WL 356279 (S.D. Fla. Jan. 23, 2023).

subsequently cause her pain. Plaintiff contends that she is blind in one eye and inflammation causes damage to her other eye.

Plaintiff does not explain what functional limitations, if any, would result from the ALJ's consideration of this "evidence," as summarized above, or how the ALJ's analysis at any step should have been adjusted to account for such limitations. While the Court notes that Plaintiff is proceeding *pro se* in this action, the Court cannot "'serve as *de facto* counsel for a party' or [ ] 'rewrite an otherwise deficient pleading in order to sustain an action.'" *Smith*, 2023 WL 361424, at *5 (quoting *Curtiss v. Comm'r of Soc. Sec.*, 856 F. App'x 276, 276 (11th Cir. 2021)). This proves especially true herein, where the Court has independently reviewed the record and has found the categories of evidence that Plaintiff describes were specifically referenced in the ALJ's decision.

To the extent Plaintiff argues that the ALJ failed to consider any of her impairments as a whole, such as rheumatoid arthritis or lupus, the Court finds that argument to be without merit. Indeed, the ALJ found that Plaintiff suffers from the severe impairments of lupus and arthritis. (R. 17). The ALJ additionally considered Plaintiff's diagnosis of rheumatoid arthritis and found that the record did not contain clinical or laboratory diagnostic test results definitively establishing this condition. (*Id.*).

To the extent Plaintiff asserts that the ALJ did not consider her daily symptoms as noted in her briefing, this assertion is belied by the record. Plaintiff's allegations of her symptoms were all noted and considered by the ALJ as provided below:

> The claimant makes the following allegations: The claimant experiences inflammation. The claimant also experiences pain in the knees, elbows, ankles, and wrists "sometimes." The claimant experiences joint swelling and stiffness, as well. Furthermore, the claimant cannot feel the bottom of the feet due to nerve damage caused by lupus. The claimant's pain levels fluctuate, particularly when under lupus flare. The claimant's pain can last from one to two weeks. In addition, the

11

>claimant experiences fatigue, and [then] must rest for at least two hours after running errands or receiving intravenous therapy. Moreover, the claimant experiences bilateral myopia, skin rashes, and blood clots, and is unable to control the bladder and bowels. The claimant takes medications for lupus, pain, and overactive bladder. The claimant wears glasses at night and wears sunglasses inside. The claimant has had difficulty obtaining treatment. The claimant can lift 10 to 12 pounds. The claimant cannot stand for "too long." The claimant cannot walk farther than two feet. The claimant is not on the feet for long. The claimant can sit for 20 minutes before the claimant needs to stand. The claimant requires assistance from family members in order to perform day to day activities. The claimant "barely" cooks, and cooks only simple meals. The claimant walks the dogs within a block of the [ ] residence. The claimant does not drive far. The claimant uses a shower chair when the claimant has lupus flares.

(R. 20).

Ultimately, and upon review of the above, the ALJ found that that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*). The ALJ noted that Plaintiff's records did not reflect repeated examination findings of inflammation, swelling, tenderness, weakness, or numbness, and that Plaintiff had repeatedly reported experiencing improvement in her pain and swelling with over-the-counter pain and non-steroidal anti-inflammatory medications. (R. 21). The ALJ further noted that Plaintiff had exhibited normal neurological functioning, full strength, and a normal and unassisted gait, and the claimant's records do not reflect repeated examination findings of weakness. (*Id.*). The ALJ found that the evidence from the record supports a finding that Plaintiff has multiple limitations, but that Plaintiff's normal test results, examination findings, symptomatic denials, reported improvement with treatment, and stable vision impairments support a finding that the claimant is not as limited as alleged. (R. 23).

As Defendant correctly notes, Plaintiff's general challenges in this appeal are essentially an improper invitation for this Court to re-weigh the evidence and substitute its own judgment for

that of the ALJ.  *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner."); *see also Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken the view of it as a factfinder.  Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Smith*, 2023 WL 361424, at *7.

Having reviewed Plaintiff's medical records, the hearing testimony, and the ALJ's decision, the Court finds that the ALJ's decision is supported by substantial evidence.  The ALJ, as required, did consider Plaintiff's entire medical condition, including all impairments and combinations of impairments, whether severe or not.  *Leach*, 2024 WL 1446441, at *8; *Smith*, 2023 WL 361424, at *5 (citing *Childers v. Soc. Sec. Admin., Com'r*, 521 F. App'x 809, 811 (11th Cir. 2013) (as part of the governing sequential evaluation process, the ALJ "is to consider the claimant's entire medical condition, including any impairment or combination of impairments, whether severe or not")).[9]

## VI.   RECOMMENDATIONS

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that:

(1) Plaintiff's Motion for Summary Judgment (ECF No. 19) be **DENIED**, and the Commissioner's Motion for Summary Judgment (ECF No. 21) be **GRANTED**.

(2) The July 21, 2022 decision of the ALJ be **AFFIRMED**.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable Rodolfo A. Ruiz, II, United States District Court Judge for the Southern

---

[9] Liberally construing Plaintiff's briefing, Plaintiff additionally seems to assert that she is unable to work at her previous place of employment.  This argument, however, does not impact the instant analysis because the ALJ also concluded that Plaintiff is unable to perform any past work.  *See* (R. 24).

13

District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

    **RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 22nd day of July, 2024.

LAUREN F. LOUIS<br>
UNITED STATES MAGISTRATE JUDGE